## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PAMELA NELSON,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action 03-01219 (HHK)** |
| **MICHELLE JOYCE KEMPER,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

Pamela Nelson ("Nelson"), brings this action against Michelle Joyce Kemper ("Kemper"), an employee of the United States Department of Health and Human Services ("HHS"), claiming that Kemper's negligent operation of her automobile caused an accident that resulted in severe injuries to Nelson and damage to her automobile. Before the court is Kemper's renewed motion to dismiss (Dkt. #18). Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that Kemper's motion must be granted.

## I.  BACKGROUND

On April 10, 2000, at approximately 10:48 AM, Nelson was driving her car north on Dogwood Street, a two-lane road, in Washington, D.C. When Kemper, who also was proceeding in her car north on Dogwood, attempted to make an improper right turn from the left lane, she struck Nelson's car. Nelson's car was damaged and Nelson suffered severe injuries to her back, neck, and legs.

In June 2001, Nelson filed a negligence action against Kemper in D.C. Superior Court. Over six months later, on February 8, 2002, Kemper filed a motion for summary judgment, asserting that under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, the United States, not she, was the proper defendant.  On May 9, 2002, the Superior Court denied Kemper's motion because she failed to demonstrate that she attempted to obtain a certification from the U.S. Attorney General, or anyone with delegated authority, that she was driving her car within the scope of her federal employment when she hit Nelson's car.  On June 4, 2003, after obtaining the certification, Kemper removed this case to this court pursuant to 28 U.S.C. §§ 1441, 1442(a)(1).

On October 1, 2003, Kemper again moved to dismiss Nelson's complaint.  Kemper argued, as she had in Superior Court, that under the FTCA, the United States should be substituted as the only proper defendant.  In addition, Kemper contended that any tort action against the United States was unsustainable given that Nelson had failed to exhaust her administrative remedies prior to initiating this federal action.

In an opinion and order dated July 20, 2004, this court denied Kemper's motion.  *See Nelson v. Kemper*, No. 03-01219, slip op. at 7 (D.D.C. July 20, 2004).  Confining the scope of its review to the pleadings, this court concluded that Nelson had pled sufficient facts to rebut the government's certification that Kemper was acting within the scope of her employment at the time of the accident.  This court noted a considerable degree of ambiguity surrounding the scope-of-employment question and, in order to illuminate the issue, permitted discovery limited to the validity of the government's certification.  *Id.* at 6–7.  The court informed Kemper that she would be permitted to renew her motion following the conclusion of discovery.

Now, after the close of discovery, Kemper renews her motion to dismiss.

## II.  ANALYSIS

### A.  Standard of Review

Kemper moves to dismiss Nelson's complaint pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6).  Notwithstanding the manner in which Kemper has styled her

motion, because both parties have taken discovery on the issue and have submitted materials

beyond the pleadings to address whether Kemper was acting within the scope of her employment

at the time of the accident, the court will treat Kemper's motion to dismiss under Rule 12(b)(6)

as one for summary judgment.  *See* Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense

numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be

granted, matters outside the pleading are presented to and not excluded by the court, the motion

shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .").

Under Federal Rule of Civil Procedure 56, a motion for summary judgment should be

granted only if it is shown "that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving

party's "initial responsibility" consists of "informing the [trial] court of the basis for its motion,

and identifying those portions of the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, which it believes demonstrate the absence

of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal

quotation marks omitted).

If the moving party meets its burden, the burden then shifts to the non-moving party to

establish that a genuine issue as to any material fact actually exists.  *See Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  To meet its burden, the non-moving

party must show that "'the evidence is such that a reasonable jury could return a verdict'" in its

3

favor.  *Laningham v. United States Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Such evidence must consist of more

than mere unsupported allegations or denials and must set forth specific facts showing that there

is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322 n.3.  If the evidence is

"merely colorable" or "not significantly probative," summary judgment may be granted.

*Anderson*, 477 U.S. at 249–50.

With respect to Kemper's motion under Rule 12(b)(1), Nelson's complaint must be

construed liberally, and the plaintiff should receive the benefit of all favorable inferences that

can be drawn from the alleged facts.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d

621, 624 (D.C. Cir. 1997)*; Hosey v. Jacobik*, 966 F. Supp. 12, 12 (D.D.C. 1997).  A court may,

however, consider materials outside the pleadings it deems appropriate to decide jurisdiction.

*Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) ("A court may consider material

outside of the pleadings in ruling on a motion to dismiss for lack of . . . subject-matter

jurisdiction.").  Though a plaintiff benefits from favorable inferences on the facts, it is her

burden to prove jurisdiction.  *See Am. Farm. Bureau v. EPA*, 121 F. Supp 2d 84, 90 (D.D.C.

2000).

**B.  The Validity of the Government's Certification pursuant to 28 U.S.C. § 2679(d)(1)**

As the court has stated previously, the FTCA immunizes federal employees from suit for

certain torts committed within the scope of their employment.  *See* 28 U.S.C. § 2679(b)(1);[1]

---

[1]  28 U.S.C. § 2679(b)(1) provides:

> The remedy against the United States . . . for injury . . . arising from the negligent
> or wrongful act or omission of an employee of the Government while acting
> within the scope of his office or employment is exclusive of any other civil action
> . . . .   Any other civil action . . . arising out of or relating to the same subject
> matter against the employee's estate is precluded . . . .

*Kimbro v. Velten,* 30 F.3d 1501, 1504 (D.C. Cir. 1994) (discussing Congress's intent to make federal employees "absolutely immune to suits for damages under state tort law so long as they were acting within the scope of their employment"); *Vanover v. Hantman*, 77 F. Supp. 2d at 91, 97 (D.D.C. 1999) (finding that 28 U.S.C. § 2679 provides federal employees absolute immunity from tort liability for acts done within the scope of their employment).  In such cases, the FTCA requires the substitution of the United States as the exclusive defendant.[2]

For purposes of the FTCA, whether a federal employee acted within the scope of her employment may be determined initially by the certification of the Attorney General, 28 C.F.R. § 15.3, or any person to whom he delegates that authority.[3]  Though the Attorney General's scope-of-employment certification substitutes the United States for an individual employee by operation of law, the certification is subject to challenge.  *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 436–37 (1995).  Indeed, the certification does not receive any particular evidentiary weight.  *Kimbro*, 30 F.3d at 1509; *see also Haddon v. United States*, 68 F.3d 1420, 1423 (D.C. Cir. 1995) (noting that certification is "*not* conclusive regarding substitution of the federal government," and finding that "the federal court may determine independently whether the employee acted within the scope of employment and, therefore, whether to substitute the federal government") (emphasis in original).

---

[2] 28 U.S.C. § 2679(d)(1) provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant.

[3] In this case, that authority was delegated to Mark Nagle, former Chief of the Civil Division of the United States Attorneys Office for the District of Columbia.

An employee's conduct is within the scope of her employment if: "1) it is of the kind [she] is employed to perform; 2) it occurs substantially within the authorized time and space limits; [and] 3) it is actuated, at least in part, by a purpose to serve the master . . . ." *Konarski v. Brown*, 293 F. Supp. 2d 70, 72–73 (D.D.C. 2003) (citing *Haddon*, 68 F.3d at 1423–1424 (quoting RESTATEMENT (SECOND) OF AGENCY § 228 (1957))).  In the instant case, the conclusory certification of Assistant United States Attorney Nagle failed to clarify whether, in fact, these requirements were met.  As a result, this court ordered the parties to conduct discovery for the limited purpose of determining the propriety of the government's certification. After reviewing the parties' factual submissions, the court agrees with Kemper that the government's certification was proper.

Kemper's factual proffer has addressed each of the concerns raised previously by this court.  Specifically, the court was uncertain as to whether the time of the accident, 10:28 AM, fell within Kemper's normal work hours.  *Nelson*, No. 03-01219, at 6.  In addition, the court had no basis to conclude that the location of the accident, Dogwood Street, was in the vicinity of Kemper's place of employment.  *Id.*  Finally, the court noted the absence of any information regarding the nature of Kemper's federal employment.  *Id.*

Information produced during discovery now reveals that at the time of the accident Kemper was employed as an active duty officer in the Commissioned Corps of the U.S. Public Health Service, a branch of the U.S. Department of Health and Human Services.  Beginning in August of 1999 and continuing through April 2000, Kemper was assigned to St. Elizabeth's Hospital located at 2700 Martin Luther King, Jr. Avenue in the Southeast quadrant of the District of Columbia.  Dogwood Drive, also located in the Southeast quadrant of the District, is located

within the St. Elizabeth Hospital campus.[4]  On the day of the accident, Kemper's hours of

employment began at approximately 8:00 AM and concluded at approximately 5:00 PM.[5]  The

accident occurred when Kemper was transporting blood specimens from the building in which

she was working—the "C-8" building—to a laboratory located on the St. Elizabeth's campus.

Based on these undisputed facts, the court finds that Nelson was acting within the scope of her

employment when the accident at issue took place.

Despite the overwhelming evidence to the contrary, Nelson submits that the

transportation of blood specimens was beyond the scope of Kemper's employment.  This

proposition, however, finds no support in the record.  Nelson relies primarily on the absence of

"driving" from the list of job duties set forth in Kemper's billet description, Hinds Dep., Ex. 2,

yet this document does not purport to be an exhaustive account of every task Kemper was

expected to perform.  Indeed, the billet provides only a "brief statement of the most important

duties, supervisory responsibilities, and work relationships," associated with the clinical nurse

specialist position.  *Id.*

One such enumerated responsibility is the "prevention of delays in service provision,"

precisely what Kemper was attempting to achieve by transporting blood specimens on the day in

question.  Sonia Hinds, Kemper's direct supervisor at St. Elizabeth's Hospital, testified during

her deposition that the reason Kemper was delivering the specimens to the laboratory—despite

the fact that specimens were collected and delivered to the laboratory according to a

---

[4]  The court erroneously stated in its prior opinion that Dogwood Drive is located in the
Northwest quadrant of the District.  *See Nelson*, No. 03-01219, at 5.

[5]  There is some discrepancy regarding the precise hours of Kemper's shift on April 10, 2000.
Sonia Hinds, Kemper's supervisor, stated during her deposition that Kemper's shift was from
7:00 AM to 3:30 PM.  Hinds Dep. 21:23.  Kemper, however, recalled her shift lasting from 8:00
AM to "4:30, 5:00 o'clock."  Kemper Dep. 23:25.  Nevertheless, the record is clear that Kemper
was working at the time of the accident, 10:28 AM.

standardized schedule—was because "they had already . . . made a round and the specimens had to get to the lab quickly." Hinds Dep. 31:18–20. "There was nobody to come and get it and it had to get to the lab at a certain hour before the specimen spoiled, and so you just had to get it there." *Id.* 33:21–24. "[T]he specimens needed to get to the lab and Ms. Kemper, being a conscientious nurse, made sure that the specimens got to the lab to make sure that the patient got the proper treatment." *Id.* 36:8–12.[6]

This testimony confirms that Kemper was well within the bounds of her duties when driving to the laboratory on April 10, 2000, and accordingly, the government's certification is proper. Because the certification was valid, the United States is substituted as the defendant in this action.

## C.  Failure to Exhaust

Having held that substitution is warranted, the court turns next to the question of whether this court has jurisdiction over this matter.

The FTCA requires a claimant to exhaust all administrative remedies before filing a complaint in federal district court. 28 U.S.C. § 2675(a). This requirement is jurisdictional and cannot be waived. *See, e.g., McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."); *Konarski v. Brown*, 2004 WL 1249346, at *1 (D.C. Cir. 2004) ("Claimants must

---

[6]  That Kemper was driving her personal vehicle at the time of the accident does not undermine the government's certification. Hinds testified that although the St. Elizabeth campus was large, no transportation connected the various facilities. *Id.* 33:19–21. Hinds further testified that it was "common practice" for employees to use their personal vehicles to deliver specimens to the laboratory. *Id.* 32:2–4. Nelson has not rebutted this testimony, and the court finds that it supports Kemper's contention that her operation of a vehicle at the time in question was within the scope of her federal employment.

meet the *jurisdictional prerequisite* of filing an administrative complaint with the appropriate agency before filing suit in district court.") (emphasis added).

Here, Nelson concedes that no administrative complaint has been filed.  Instead, she argues that any exhaustion requirement should be waived because of Kemper's allegedly dilatory tactics.  Nelson submits that she has been prejudiced by Kemper's decision to delay obtaining her scope-of-employment certification and remove her action to federal court.  Even if this were true, as stated above, the FTCA's exhaustion requirement is jurisdictional and therefore equitable relief is unavailable.  Consequently, Nelson's complaint must be dismissed for lack of subject matter jurisdiction given that she has not complied with the FTCA's exhaustion provision.

The court notes, however, that Nelson is not precluded from refiling her action once she has overcome the exhaustion hurdle.  In 1988, Congress passed the Federal Employees Liability Reform and Tort Compensation Act (commonly referred to as the "Westfall Act"), Pub. L. 100-694, 102 Stat. 4563 (1988), which amended the FTCA to allow plaintiffs an opportunity—after dismissal—to exhaust their administrative remedies.  The FTCA states, in pertinent part:

> Whenever an action or proceeding in which the United States is substituted as the party defendant under this subsection is dismissed for failure first to present a claim pursuant to section 2675(a) of this title, such a claim shall be deemed to be timely presented under section 2401(b) of this title if—(A) the claim would have been timely had it been filed on the date the underlying civil action was commenced, and (B) the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action.

28 U.S.C. § 2679(d)(5); *see also Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 83 (2d Cir. 2005).  Nelson has satisfied the first of § 2679(d)(5)'s requirements:  Nelson's accident occurred in April 2000, and she filed her initial complaint in D.C. Superior Court in June 2001—well within the two-year statute of limitations applicable to claims under the FTCA,

*see* 28 U.S.C. § 2401(b) ("A tort claim against the Untied States shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues . . . .").  Assuming then that Nelson files an administrative complaint within sixty days of the docketing of this order, her complaint will be considered timely.

Nevertheless, because Nelson has failed to exhaust her administrative remedies at the present time, her complaint is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

### III.  CONCLUSION

For the foregoing reasons, Kemper's renewed motion to dismiss is granted (Dkt. #18). An appropriate order accompanies this memorandum.

Henry H. Kennedy, Jr.
United States District Judge

Dated: August 30, 2006.